**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

-----------------------------------------------------------------------X
RAFIQ ANDERSON,

                                    Civil Action No.

                    Plaintiff,

-against-                         **COMPLAINT**
TARGET BUILDING CONSUTRCTION
INCORPORATED; ASSOCIATED SPECIALTY      Plaintiff Demands
CONTRACTING, INCORPORATED; EARL        A Jury Trial
BERRY (individually); and
DAN HUMMEL (individually).

                    Defendants.
-----------------------------------------------------------------------X

Plaintiff, Rafiq Anderson, as and for his Complaint against the above Defendants respectfully states upon information and belief as follows:

## NATURE OF THE ACTION

1. Plaintiff complains pursuant to 42 U.S.C. §1981; Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII")), 42 U.S.C § 1981, and to remedy violations of the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, et. seq. ("PHRA"), the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq ("PFPO") and seeks damages to redress the injuries Plaintiff has suffered as a result of being Discriminated against, and Retaliated against, by his employer solely due to his race and in retaliation for his opposition and reporting the unlawful behavior to management.

1

**PARTIES**

2. Plaintiff, RAFIQ ANDERSON (hereinafter also referred to as Claimant and "ANDERSON") is a resident of the County of Philadelphia, in the Commonwealth of Pennsylvania.

3. At all times material, Defendant Target Building Construction  Incorporated is a domestic corporation in the Commonwealth of Pennsylvania.

4. At all times material, Defendant Target Building Construction Incorporated operates it's corporate headquarters at 20 S. Union Avenue, Lansdowne, PA 19050.

5. At all times material Defendant Associated Specialty Contracting Incorporated is a domestic corporation in the Commonwealth of Pennsylvania.

6. At all times material Defendant Associated Specialty Contracting Incorporated operates it's corporate headquarters located at 98 Lacrue Avenue, Glen Mills, PA 19342.

7. At all times material Defendant Associated Specialty Contracting Incorporated and Defendant Target Building Construction Incorporated (hereinafter collectively referred to as Defendant and "TARGET") are both individual and joint employers of Plaintiff.

8. At all times material Earl Berry (hereinafter referred to as Defendant and "BERRY") was employed by Defendant TARGET.

9. At all times material, Defendant BERRY was the General Construction Manager for Defendant TARGET.

10. At all times material, Defendant BERRY held supervisory authority over Plaintiff.

11. At all times material, Defendant DAN HUMMEL (hereinafter referred to as Defendant and "HUMMEL") was employed by Defendant TARGET.

12. At all times material, Defendant HUMMEL was employed as a Construction Superintendent for Defendant COMMONWEALTH.

13. At all times material Defendant HUMMEL held supervisory authority over Plaintiff.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

14. Around September 30, 2021, Plaintiff timely filed a charge of race discrimination and retaliation with the U.S. Equal Employment Opportunity Commission ("EEOC"), the Pennsylvania Human Relations Commission ("PHRC"), the Philadelphia Commission on Human Relations ("PCHR") alleging violations of Title VII, and the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963 ("PHRA") and violations of the Philadelphia Fair Practices Ordinance, § 9-1100 et. seq. ("PFPO").

15. Plaintiff by and through his attorney requested, on both his Charge of Discrimination Cover Sheet that his Charge be simultaneously filed with the PHRC and the PCHR and "any other State or local agency with whom [the EEOC has] a work sharing agreement."

16. On or around March 4, 2022, the EEOC issued Plaintiff a, "Dismissal and Notice of Right to Sue."

17. This action is being commenced within ninety (90) days of Plaintiff receiving the Notice of Right to Sue.

18. Plaintiff has complied with all administrative prerequisites to bring this lawsuit.

19. Plaintiff's claims are still pending before the PHRC and the PCHR because less than one year has elapsed since PHRC and PCHR assumed jurisdiction over Plaintiff's Charge. Plaintiff will seek leave to amend this complaint to assert his PHRA and PFPO claims against the parties referenced in ¶ 9 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the

date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this lawsuit pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C §§ 2000e to 2000e-17 and under 42 U.S.C § 1981

21. Venue in this judicial district is proper pursuant to because a substantial part of the acts or omissions giving rise to Plaintiff's claims occurred in Philadelphia, Pennsylvania, Philadelphia County within the Eastern District of Pennsylvania, and Defendants are subjected to personal jurisdiction here.

## MATERIAL FACTS

22. On or around the summer of 2017, Defendant TARGET hired Plaintiff ANDERSON, a black African American and Muslim male to be a laborer at Defendant's construction site located at Children's Hospital of Philadelphia.

23. Almost immediately after Plaintiff began his employment with Defendants, he was subjected to jokes about Muslims by his co-workers and supervisor, Defendant BERRY.

24. Also, on one occasion in or around the autumn of 2017, Plaintiff went into the locked construction storage cage to obtain his hard hat and someone had defecated in his hat.

25. Plaintiff immediately reported this to his supervisors who told Plaintiff that perhaps a patient or employee at Children's Hospital of Philadelphia had done it.

26. Plaintiff explained that was impossible because the unit required two credential codes to obtain access to the unit.

4

27. Defendants ignored Plaintiff's complaints and did not investigate to determine who defecated in Plaintiff's hard hat.

28. In or around February 2020, Plaintiff witnessed Defendant BERRY with a noose around his neck in the workplace, which was a clear impersonation of a lynching.

29. Plaintiff was able to photograph the incident, because he felt that it was extremely discriminatory and outrageous conduct.

30. In or around September 2020, Plaintiff received a text message from Defendant Berry where Defendant Berry referred to Plaintiff as "my nigger."

31. The word nigger was not typed, but rather instead of the word "nigger," Defendant BERRY used a black face emoji in place of the word.

32. After Plaintiff received the text message referring to him as "nigger" by way of an emoji, he again reported the discriminatory conduct to Defendant HUMMEL and at the same time Plaintiff reported the "noose" photograph to Defendant HUMMEL and requested that Defendant BERRY be given sensitivity training.

33. Defendant HUMMEL did an investigation and Defendant BERRY was moved to another job site location.

34. However, just two months after Plaintiff's complaints of ongoing discrimination, and in retaliation for Plaintiff engaging in a protected activity, Defendant placed Plaintiff out of work in November 2020.

35. Plaintiff remained out of work but continually contacted Defendants about returning to another job site.

36. Plaintiff was out of work without pay until December 4, 2020, when Defendant officially terminated his employment.

5

37. Immediately after Plaintiff was terminated, Defendant BERRY was returned to the construction site where he deliberately discriminated against Plaintiff.

38. Defendants told Plaintiff that the reason for the termination was because officials at CHOP complained that he was not wearing a face mask while he worked.

39. Plaintiff on one occasion pulled his face mask down to take a drink of water during the workday and immediately placed the mask over his nose and mouth.

40. The face mask complaint is pretext for actual discrimination.

41. This is pretextual because Defendants operate numerous construction sites around Philadelphia and the Philadelphia suburbs, but Defendant never placed Plaintiff at another site permanently after he was suspended.

42. Defendant at all times could have continued to employ Plaintiff.

43. Defendant at all times filed to properly investigate or to take any remedial measures related to Plaintiff's multiple complaints of discrimination, harassment and hostile work environment.

44. Defendant then retaliated against Plaintiff because of his complaints of unlawful discrimination in the workplace by his supervisor.

45. Defendant failed to take appropriate remedial measures when Plaintiff first complained, and the discrimination continued.

46. Only after Defendant BERRY discriminated against Plaintiff a second time, did Defendants remove BERRY from the job site.

47. Defendants immediately replaced BERRY once they unlawfully suspended and fired Plaintiff.

48. As Plaintiff's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

49. The above are just some of the examples of unlawful discrimination and retaliation to which the Defendants subjected the Plaintiff.

50. Defendants have established a pattern and practice of discrimination in their workplace.

**AS A FIRST CAUSE OF ACTION**
**UNDER FEDERAL LAW**
**42 U.S.C. Section 1981**

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

52. 42 USC Section 1981 states in relevant part as follows:

    a. (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

53. Plaintiff makes claims for all damages available to his as a result of Defendants unlawful discrimination and retaliation.

### AS A SECOND CAUSE OF ACTION
### UNDER FEDERAL LAW
### FOR RETALIATION UNDER 42 U.S.C. Section 1981

54. Plaintiffs, as members of the Black and/or African-American race, were discriminated against by Defendants because of their race as provided under 42 USC Section 1981 and have suffered damages as set forth herein.

55. And Plaintiff also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendants' unlawful employment practices.

56. Plaintiff was terminated because of the racially discriminatory environment.

57. Plaintiff was terminated as a result of his engaging in protected activity and reporting the discrimination in the workplace.

58. Plaintiff makes claims for all damages available to his as a result of Defendants unlawful discrimination and retaliation.

### Count III
### Title VII Disparate Treatment
### 42 U.S.C. § 2000e-2
### (Against Company Defendants Only)

59. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

60. Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

61. Title VII further provides that "un unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a

motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

62. Defendants acted with the intent to discriminate.

63. Defendants acted upon a continuing course of conduct.

64. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**Count IV**
**Title VII Hostile Work Environment**
**42 U.S.C. § 2000e-2**
**(Against Company Defendants Only)**

65. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

66. Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

67. An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

68. Respondeat superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action. Andrews v. City of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

9

69. Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

70. The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

71. Plaintiff subjectively regarded the harassing conduct as unwelcome and unwanted and objectively opposed the conduct.

72. The conduct was both severe and pervasive.

73. The conduct was physically threatening and humiliating.

74. The conduct unreasonably interfered with Plaintiff's work performance.

75. The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

76. Defendants provided a futile avenue for complaint.

77. Defendants retaliated against Plaintiff for his complaints.

78. Defendants acted upon a continuing course of conduct.

79. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**Count V**
**Title VII Retaliation**
**42 U.S.C. § 2000e-3**
**(Against Company Defendants Only)**

10

80. Plaintiff incorporates by reference each and every allegation made in the above paragraphs of this complaint.

81. Title VII protects employees from retaliation for attempting to exercise their rights under the Act:

> 42 U.S.C. § 2000e-3. Other unlawful employment practices
> (a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings. It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [she] has opposed any practice made an unlawful employment practice by this subchapter, or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

82. The Supreme Court in Burlington v. N. & S.F. Ry. V. White, 548 U.S. 53, 68 (2006) held that a cause of action for retaliation under Title VII lies whenever the employer responds to protected activity in such a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination."

83. Informal complaints and protests can constitute protected activity under the "opposition" clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir. 2006) ("Opposition to discrimination can take the form of informal protests of discriminatory employment practices, including making complaints to management.").

84. Title VII's anti-retaliation provision also protects employees who speak out about discrimination by answering questions during an employer's internal investigation. Crawford v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009) (declaring that there is "no reason to doubt that a person can 'oppose' by responding to someone else's question just as surely as by provoking the discussion, and nothing in the statute requires a freakish rule protecting an employee who reports

11

discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question.").

85. Retaliation need not be job-related to be actionable under Title VII—an employer can effectively retaliate against an employee by taking actions not directly related to her employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting authority from the Third Circuit and others requiring that the plaintiff suffer an adverse employment action in order to recover for retaliation).

86. "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that '[she] was acting under a good faith, reasonable belief that a violation existed.'" Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1085 (3d Cir. 1996); Griffiths v. CIGNA Corp., 988 F.2d 457, 468 (3d Cir. 1993); Sumner v. United States Postal Service, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds by Miller v. CIGNA Corp., 47 F.3d 586 (3d Cir.1995).

87. An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. See Moore, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class.")

88. Here, Defendants discriminated against Plaintiff because of her protected activity under Title VII.

89. Plaintiff was acting under a reasonable, good faith belief that her right to be free from discrimination on the basis of race, color, sex and retaliation was violated.

90. Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

91. There was a causal connection between Defendants' materially adverse actions and Plaintiff's protected activity. In determining whether a plaintiff has produced evidence of causation, courts in the Third Circuit focus on two indicia: timing and evidence of ongoing antagonism. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between her protected activity and Defendants' actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

92. Defendants' actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

93. Defendants acted upon a continuing course of conduct.

94. Plaintiff will rely on a broad array of evidence to demonstrate a causal link between his protected activity and Defendants' actions taken against him, such as the unusually-suggestive proximity in time between events, as well as Defendants' antagonism and change in demeanor toward Plaintiff after Defendants became aware of Plaintiff's protected activity.

95. As a result of Defendants' violations of Title VII, Plaintiff has suffered damages, including, but not limited to past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

96.

## **JURY DEMAND**

Plaintiff requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, including but not limited to all emotional distress, back pay and front pay, punitive damages, liquidated damages, statutory damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

*Attorneys for Plaintiff, Rafiq Anderson*

By: */s/ Samuel C. Wilson, Esq.*

Samuel Wilson, Esq.
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103
(215) 391-4790

Date: June 2, 2022

samuel@dereksmithlaw.com

14